IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

QUINN CROOKSTON,

*Plaintiff,*

*v.*

Case No: 2:16-CV02071-JTM-JPO

DOCTOR'S, INC. and BRUCE DOCTOR,

*Defendants.*

# DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants Doctor's, Inc., and its owner, Bruce Doctor, by and through Eric Carter of Carter Law Corp. and pursuant to Fed. R. Civ. Pro. 56 and U.S. Dist. Ct. Rule of Practice No. 56.1, hereby offer the following Reply Memorandum in Support of their Motion for Summary Judgment on Plaintiff's claims:

## TABLE OF CONTENTS

I. Introduction ..... 3
II. Reply to Plaintiff's Statement of Additional Uncontroverted Facts ..... 4
III. Argument and Authorities ..... 4
A. Summary Judgment is Appropriate on Count I Because the Motor Carrier Act Exemption Applies to Plaintiff. ..... 4
i. Statutory Exemption Under FLSA Section 13(b)(1) ..... 4
ii. Doctor's is a Motor Carrier or Private Motor Carrier Subject to the Authority of the Secretary of Transportation. ..... 5
1. Defendants have Established that Plaintiff Drove a Vehicle/Trailer Combination that Subjected him to the Motor Carrier Act Exception to the FLSA. ..... 5
2. The Motor Carrier Act Exception Applies to Plaintiff's Entire Employment Period. ..... 7
iii. Doctor's Operates in Interstate Commerce. ..... 9
iv. Doctor's is the Owner of the Property being Transported ..... 10

v. The Property Being Transported by Doctor's was Being Sold or was Used in Furtherance of a Commercial Enterprise ..... 10

vi. Plaintiff's Work-Related Activities Affected Highway Safety. ..... 11

B. Defendants are Entitled to Summary Judgment on Plaintiff's Retaliation Claim (Count II) Because Defendants Terminated Plaintiff's Employment for Reasons Unrelated to his FLSA Claim. ..... 11

1. Plaintiff's Discharge Would have Occurred Regardless of his FLSA Filing Because he was a Seasonal Irrigation Worker Whose Season had Just Ended. ..... 12

2. Plaintiff's Discharge Would have Occurred Regardless of his FLSA Filing Because Doctor's had Already Decided to Terminate His Employment. ..... 14

C. Defendants are Entitled to Summary Judgment on Plaintiff's State Law Claim (Count III) Under the Kansas Minimum Wage Maximum Hour Law ("KMWMHL"). ..... 15

D. Plaintiff Abandoned his Kansas Public Policy Claim (Count IV). ..... 16

## TABLE OF AUTHORITIES

Cases

*Angleton v. Beech Aircraft Corp.*,
No. 96-1027-JTM, 1997 WL 446262 (D. Kan. July 30, 1997) ..... 13

*Brown v. Ford Storage & Moving Co.*,
224 P.3d 593 (Kan.App. 2010) ..... 16

*Coffey v. Healthtrust, Inc.*,
955 F.2d 1388 (10th Cir. 1992) ..... 16

*Collins v. Heritage Wine Cellars, Ltd.*,
589 F.3d 895 (7th Cir. 2009) ..... 8

*Conner v. Schnuck Markets, Inc.*,
121 F.3d 1390 (10th Cir. 1997) ..... 13

*Dayton Hudson Corp. v. Macerich Real Estate Co.*,
812 F.2d 1319 (10th Cir.) ..... 16

*Liberles v. County of Cook*,
709 F.2d 1122 (7th Cir.1983) ..... 15

*McKenzie v. Renberg's Inc.*,
94 F.3d 1478 (10th Cir.1996) ..... 13

*Morris v. McComb*,
332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44 (1947) ..... 8, 9

Plaintiff cites to an unpublished case from the District of Colorado, *Cooper v. Noble Casing, Inc.*, No. 15-CV-1907-WJM-CBS,
2016 WL 6525740 (D. Colo. Nov. 3, 2016) ..... 7, 8

*Security National Bank v. Belleville Livestock Commission*,
619 F.2d 840 (10th Cir.1979) .......... 15
*Thomas v. The Wichita Coca-Cola Bottling Co.*,
968 F.2d 1022 (10th Cir. 1992) .......... 11

Statutes

29 U.S.C. § 213(b)(1) .......... 3, 4
K.S.A. 44-1202(d) .......... 16
K.S.A. 44-1204(c)(1) .......... 16

Rules

D. Kan. Rule 56.1(e) .......... 5, 6
Fed. R. Civ. Pro. 56 .......... 1, 3

Regulations

29 C.F.R. § 782.2(b)(3) .......... 8

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I. *Introduction*

Doctor's claims an exemption from the FLSA under 29 U.S.C. § 213(b)(1), which exempts the payment of overtime wages to those persons engaged in interstate commerce and subject to the regulations of the United States Department of Transportation ("DOT"). While the FLSA applies to Defendant, Plaintiff's own admissions and failures to properly controvert Defendants' statements of uncontroverted fact establish that Defendant is exempt from the overtime requirements of the FLSA because of the federal Motor Carrier Act ("MCA") exemption. 29 U.S.C. § 213(b)(1). The applicability of the MCA exemption is a threshold issue that necessitates summary judgment under Rule 56 and precludes the pursuit of this matter by Plaintiff.

As to the Kansas Minimum Wage and Maximum Hours Law ("KMWMHL") and Kansas public policy claims, Plaintiff abandoned both by failing to respond at all to Defendants' motion

and argument on those issues.

## II. *Reply to Plaintiff's Statement of Additional Uncontroverted Facts*

1. Plaintiff adopts Defs' SOF #22-28.

***Response: Uncontroverted.***

2. Defendant is an employer within the meaning of the Fair Labor Standards Act.

***Response: Uncontroverted.***

3. The Ford F-150 driven by Plaintiff during his employment has a Gross Vehicle Weight Rating ("GVWR") of 8,900 pounds.

***Response: Uncontroverted.***

4. The Ford F-150 driven by Plaintiff was unsafe to drive loaded in excess of its GVWR.

***Response: Controverted. Plaintiff's Ex. D-2 (Ford F-150 Operator's Manual at 221) states nowhere that the truck would be "unsafe to drive loaded in excess of its GVWR". Moreover, this is irrelevant, as the evidence before the Court is not the <u>truck's</u> GVWR, but the <u>combined weight</u> of the truck and its compressor/trailer.***

5. Defendants did not pay Plaintiff time and a half for any time worked during his employment with Defendants.

***Response: Uncontroverted.***

## III. *Argument and Authorities*

### A. *Summary Judgment is Appropriate on Count I Because the Motor Carrier Act Exemption Applies to Plaintiff.*

#### *i.* Statutory Exemption Under FLSA Section 13(b)(1).

Doctor's is exempt from the overtime provisions of the FLSA due to the Motor Carrier

Exemption. The FLSA specifically exempts "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49 [The Motor Carrier Act]." 29 U.S.C. § 213(b)(1).

### *ii.* Doctor's is a Motor Carrier or Private Motor Carrier Subject to the Authority of the Secretary of Transportation.

#### ***1. Defendants have Established that Plaintiff Drove a Vehicle/Trailer Combination that Subjected him to the Motor Carrier Act Exception to the FLSA.***

Plaintiff failed to controvert and therefore concedes that:

- Doctor's operates commercial motor vehicles subject to the Federal Motor Carrier Safety Regulations ("FMCSR"). Defs' SOF 4.
- Doctor's is subject to inspections and audits by the DOT's Federal Motor Carrier Safety Administration. ("FMCSA"). Defs' SOF 5.
- Doctor's provides motor vehicle transportation for compensation and transports property by motor vehicle. Defs' SOF 8.
- Doctor's is the owner, lessee, or bailee of the property being transported, including tools, equipment, leased compressors, and items being installed during the course of irrigation system installations, winterizations, and repairs. Defs' SOF 9.
- The property being transported is for sale or to further a commercial enterprise." Defs' SOF 10.
- Doctor's is in the business of providing commercial motor vehicle transportation of landscaping, lawn care, irrigation, and other goods and services as part of a "commercial enterprise". Defs' SOF 12.

- Doctor's has a DOT registration number and its work trucks all bear that DOT number. Defs' SOF 13.

Pursuant to D. Kan. Rule 56.1(e), Plaintiff had an obligation to "fairly meet the substance of the matter asserted." Plaintiff attempts to dance around certain salient Statements of Fact, however, by engaging in some wordplay. For example, with regard to Defs' SOF 11 provides that "Doctor's trucks and trailers are commercial motor vehicles, many of which weigh in excess of 10,001 pounds." Rather than admit this, Plaintiff responded, in relevant part, "Controverted to the extent it implies that *all* of Doctor's motor vehicles weigh in excess of 10,001 pounds, or that Plaintiff exclusively operated a motor vehicle weighing in excess of 10,001 pounds." *Plaintiff's Response,* p. ix. Clearly, Defs' SOF 11 stated or implied neither of those things, and Defs' SOF 11 should be deemed admitted.

Similarly, with regard to Defs' SOF 14, Defendants established that "As an irrigation technician, Plaintiff frequently drove a truck and pulled a trailer with a combined weight well in excess of 10,000 pounds, all while operating on the public roads and highways in Kansas and Missouri." Rather than admit *expressly* that Plaintiff did, in fact, drive a truck and pull a trailer "with a combined weight well in excess of 10,000 pounds",[1] Plaintiff instead purported to controvert this statement by challenging the use of the word "frequently". Plaintiff did, however, admit that he "pulled '*a*' trailer for about six weeks out of the year" (*Plaintiff's Response,* p. ix, emphasis added) and this should be deemed as an admission that he drove a truck and pulled a trailer with a combined weight well in excess of 10,000 pounds (the minimum weight of which is established in subsequent statements of fact).

---

[1] Defs' Statement of Fact immediately following Defs' SOF 14, 18, and 19 establishe that this combined weight was 10,140 pounds, not including Plaintiff's weight of approximately 170 pounds.

Again, in the following Defs' SOF 16, Defendants established that the *lightest* compressor/trailer driven and pulled by Plaintiff weighed 10,140 pounds, excluding Plaintiff's weight. Plaintiff, rather than admit this critical issue, attempts to controvert it simply by responding "Controverted to the extent that movant's use of Def's Exhibit A-1 is misleading and insufficient to meet movant's burden. *See* argument," without further discussion. *Plaintiff's Response,* p. x. In so doing, Plaintiff has failed to satisfy his obligation to "fairly meet the substance of the matter asserted." D. Kan. Rule 56.1(e). Even were this Court willing to scour Plaintiff's argument for any support of Plaintiff's position, such an effort would be in vain. The only reference in Plaintiff's argument appears to be on p. 3 of *Plaintiff's Response*, in which Plaintiff incorrectly asserts:

> Defendants have provided one document that proves that, on one date, nearly 10 months after Plaintiff was terminated, a truck with an attached trailer, weighed a total of 10,140 pounds. (*See* Def's Ex. A-1.) Such document was provided through discovery on or around December 20, 2016. No information has been provided as to ***the identity of such vehicle***, ***whether that vehicle was loaded in a manner loaded by Plaintiff during his employment***, ***or the make and model that was attached***.

*Id.* This attempt by Plaintiff to escape the facts, however, is cut-off by Defs' SOF 17, which provides that the weight reflected in Defs' SOF 16 is that of "***the*** Ford truck when fully loaded ***only with the supplies, materials and equipment Plaintiff routinely used*** during his winterization duties, including the weight of ***the*** compressor-trailer pulled behind ***the truck driven by Plaintiff***."

Defendants have, therefore, plainly and definitively established that Plaintiff operated a vehicle/trailer combination with a weight exceeding 10,001 pounds, and Defendants therefore qualify for the Motor Carrier Act exemption.

***2. The Motor Carrier Act Exception Applies to Plaintiff's Entire Employment Period.***

As a back-up argument, Plaintiff argues that, even if Defendants have proven that Plaintiff did, on occasion, drive a vehicle/trailer combination that subjected him to the motor carrier act exception, this doesn't mean he was *always* exempt. In support of that argument, Plaintiff cites to an unpublished case from the District of Colorado, *Cooper v. Noble Casing, Inc.*, No. 15-CV-1907-WJM-CBS, 2016 WL 6525740, at *4 (D. Colo. Nov. 3, 2016), in which the *plaintiff argued* that the application of the Motor Carrier Act exception should be judged on a workweek-by-workweek basis where an employee works both on vehicles weighing 10,000 pounds or less and on vehicles weighing more than 10,000 pounds. This case, however, offers Plaintiff no actual support, as the district court in *Noble specifically stated* in footnote 3 that "*The Court has no occasion at this point to review the Labor Department's interpretation*." *Id.* [FN3] at *4 (emphasis added). As such, this is certainly not compelling authority.

Plaintiff attempts to salvage his case by arguing that, even if the Motor Carrier Act exception bars his recovery in weeks in which he drove vehicles in excess of 10,001 pounds, he should still be able to recover for overtime in weeks in which he drove vehicles weighing less than 10,001 pounds. Such an argument was flatly rejected in a Seventh Circuit decision penned by Judge Richard A. Posner, *Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895, 901 (7th Cir. 2009). In *Collins*, the Seventh Circuit held:

> Some of the plaintiffs occasionally drove lighter trucks, and they argue that when they were doing that they were covered by the Fair Labor Standards Act. But to divide jurisdiction in this way would be contrary to the Supreme Court's sensible decision in *Morris v. McComb,* 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44 (1947), which held that the employer of a driver who may sometimes be required to deliver goods in interstate commerce is subject to the Motor Carrier Act even if most of his driving is intrastate. Cf. *Levinson v. Spector Motor Service, supra;* 29 C.F.R. § 782.2(b)(3). Dividing jurisdiction over the same drivers, with the result that their employer would be regulated under the Motor Carrier Act when they were driving the big trucks and under the Fair Labor Standards Act when they were driving trucks that might weigh only a pound less, would require

> burdensome record-keeping, create confusion, and give rise to mistakes and disputes.

*Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895, 901 (7th Cir. 2009). In the absence of any controlling authority from the Tenth Circuit, this Court should embrace the logic of *Collins*.

### ***iii.*** **Doctor's Operates in Interstate Commerce.**

Regarding the issue of whether the Doctor's operates in interstate commerce, Plaintiff appears to have conceded this point, as he controverted none of Defendants' Statements of Fact Nos. 22-28 and 31-35. For example, Plaintiff failed to controvert, and therefore conceded, that:

- "Doctor's operates in interstate commerce as a motor private carrier subject to Department of Transportation authority." Defs' SOF 22
- At all times relevant to this case, Defendant Doctor's … "business involves the transportation of property by motor vehicle between its principal place of business in Kansas and to customers located in both Kansas and Missouri." Defs' SOF 23.
- Doctor's is regularly involved in the interstate transportation of its property. Defs' SOF 27.
- Doctor's, Inc.'s trucks travel on the public roads and highways to perform work in both Kansas and Missouri. Defs' SOF 28.
- Plaintiff was directly and routinely involved with the actual transportation of goods and services across state lines while employed at Doctor's. Defs' SOF 34.
- Doctor's has maintained a U.S. DOT number as a motor private carrier during the entire time Plaintiff was employed. Defs' SOF 35.

In the Supreme Court's decision in *Morris v. McComb*, 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44 (1947), a mere four percent of the defendant employer's total business involved interstate cartage and two of its drivers had not engaged in any interstate transportation during the entire

period in question. Nonetheless, the Supreme Court decided that, despite the small number of interstate hauls actually made, the Secretary still had the power to establish the maximum hours of service for all the carrier's employees whose work activities affected the safety of operation of motor vehicles, including those drivers who had not engaged in any interstate trips. Id.

As such, it is not necessary to attempt to calculate the percentage of Plaintiff's driving that was interstate rather than intrastate. Plaintiff has admitted that Doctor's often assigned Plaintiff a route that took him from Doctor's location in Kansas into Missouri to service Doctor's customers (Defs' SOF 33), and also that he was always subject to being assigned to jobs anywhere in the Kansas City metropolitan area (in either Missouri or Kansas) for his work according to the Company's needs. (Defs' SOF 31).

Doctor's has therefore satisfied this element of the Motor Carrier Exemption.

***iv.* Doctor's is the Owner of the Property being Transported.**

Regarding the issue of whether the Doctor's is the owner of the property being transported, Plaintiff appears to have conceded this point, as he controverted none of Defendants' Statements of Fact Nos. 36-38. Plaintiff failed to controvert, and therefore conceded, that "At all times relevant to this case, Doctor's has been the owner or lessee of the property being transported in its regular course of business and its employees have been bailees of the property owned or leased by Doctor's." Defs' SOF 36.

Doctor's has therefore satisfied this element of the Motor Carrier Exemption.

***v.* The Property Being Transported by Doctor's was Being Sold or was Used in Furtherance of a Commercial Enterprise**

Regarding the issue of whether the property being transported by Doctor's was being sold or used in furtherance of a commercial enterprise, Plaintiff appears to have conceded this point,

as he controverted none of Defendants' Statements of Fact Nos. 39-41. Plaintiff failed to controvert, and therefore conceded, that, "During Plaintiff's employment and continuing to today, Doctor's transported property in furtherance of its commercial activities." Defs' SOF 39.

As such, Doctor's transports materials in furtherance of its commercial enterprise, and Doctor's has therefore satisfied this element of the Motor Carrier Exemption.

#### *vi.* Plaintiff's Work-Related Activities Affected Highway Safety.

The key inquiry for determining whether an employee of a motor carrier subject to DOT jurisdiction is subject to the MCA exemption is whether the employee affects safety of operation of a motor vehicle in interstate commerce. *Thomas v. The Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1023 (10th Cir. 1992), *cert. denied*, 506 U.S. 1013 (1992). Despite its importance, Plaintiff nonetheless appears to have conceded this issue, as he controverted none of Defendants' Statements of Fact on this point and failed to address this issue at all in his argument.

For example, Plaintiff failed to controvert, and therefore conceded, that, during his employment at Doctor's, Plaintiff was called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities as serving as a driver (Defs' SOF 42), that, in the course of his duties as an employee of Doctor's, Plaintiff directly affected the safety of operation of Doctor's motor vehicles in the transportation on the public highways of property in interstate commerce (Defs' SOF 43), and that Plaintiff exhibited a high degree of discretion and responsibility regarding his vehicle's safety and was not routinely checked by a supervisor. (Defs' SOF 46)

Doctor's has therefore satisfied this element of the Motor Carrier Exemption.

### B. *Defendants are Entitled to Summary Judgment on Plaintiff's Retaliation Claim (Count II) Because Defendants Terminated Plaintiff's Employment for Reasons Unrelated to his FLSA Claim.*

***1. Plaintiff's Discharge Would have Occurred Regardless of his FLSA Filing Because he was a Seasonal Irrigation Worker Whose Season had Just Ended.***

On December 9, 2015, Plaintiff – an irrigation technician (Petition, ¶ 11) – was a seasonal employee whose season had just ended. Plaintiff does not controvert Defs' SOF 64 that "Plaintiff had had no communication with anyone at Doctor's about whether he would be allowed to continue working during the winter of 2015-2016, and admits he didn't know whether he was going to be laid-off." His failure to do so reflects the fact that *no one ever told him he would be keeping his irrigation job during the winter months*. Again, this was consistent with the nature of his irrigation work. Indeed, Plaintiff has failed to controvert and has actually admitted the following facts: "Irrigation technicians, like Plaintiff, are routinely laid-off during the winter months. Given that Plaintiff's sole role was that of an irrigation technician, there was no need for his position during the winter months." Defs' SOF 49. "The latest time of year that irrigation technicians would be done with their winterizations of irrigation systems is the second week of December 'at the very latest." Defs' SOF 50. "Plaintiff has been laid-off or fired from *every* lawn and landscaping company (MW Landscape, Epic, and Aspen) for which he has performed irrigation technician services in November or December each year." Defs' SOF 53 (emphasis added). In fact, since he has been in Kansas City, Plaintiff has *never* worked during the winter months as an irrigation technician because he has been fired or laid-off, in part because 'there's not really a need for irrigation technicians in the winter'." Defs' SOF 54 (emphasis added). "Accordingly, beginning December 20, 2014, through February 2, 2015, Plaintiff was unemployed by Doctor's and collected unemployment benefits." Defs' SOF 51.

Plaintiff does, however, attempt to controvert Defs' SOF 55 and 56, but fails to do so successfully. Specifically, Defs' SOF 55 provides that "Doctor's keeps a hand-written, paper

schedule book, which is a method Doctor's has used for years. As calls come in for irrigation work, they are simultaneously written on a work orders and written in the schedule book. At the end of each day or early each morning, the work tickets are retrieved from a file, organized and given to the technician" Defs. SOF 55. Defs' SOF 56, in turn, provides that the "2015 Schedule Book (A-6), *shows that no additional work was scheduled for Plaintiff as of December 9, 2015*." (Emphasis added.)

Plaintiff purports to controvert these "to the extent that Def.'s Exs. A-5 and A-6 purport to show any information other than the scheduled irrigation work for single workweeks in December 2014 and December 2015" and "to the extent Def's Ex. A-6 purports to show that no additional work was scheduled for Plaintiff beyond December 7, 2015." Basically, Plaintiff is simply complaining that the schedule book establishes that there were no more jobs assigned to Plaintiff as of the day he was terminated, which would be consistent with Defendants' position that he was let go, at least in part, because it was the end of the irrigation season and there was no more work for him. The very fact that, as of the day of Plaintiff's termination, the schedule book shows there were no more irrigation jobs scheduled for Plaintiff in now way controverts Defs' SOF 55 and 56. While Plaintiff also complains that he "has not had the opportunity to depose Defendants or their representatives on the credibility of such documentation," it should be noted that *Plaintiff did not request further discovery on this point*.

Because Plaintiff's discharge would have occurred *regardless of* his filing an FLSA claim, Plaintiff cannot survive the "but for" test required by the Tenth Circuit. *See Angleton v. Beech Aircraft Corp.*, No. 96-1027-JTM, 1997 WL 446262, at *4 (D. Kan. July 30, 1997) ("The motivating factor test is a "but for" inquiry and a discharge is discriminatory under § 215(a)(3) only if it would not have occurred but for the retaliatory intent. *McKenzie v. Renberg's Inc.*, 94

F.3d 1478, 1483 (10th Cir.1996), *cert. denied,* 520 U.S. 1186, 117 S.Ct. 1468, 137 L.Ed.2d 682 (1997).”); *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1399 (10th Cir. 1997) (“[A] ‘discharge is unlawful [under § 215(a)(3) of the FLSA] only if it would not have occurred *but for* the retaliatory intent.’”)

***2. Plaintiff’s Discharge Would have Occurred Regardless of his FLSA Filing Because Doctor’s had Already Decided to Terminate His Employment.***

Plaintiff, in his response, purports to controvert Defs’ SOF 47, which states that “During the months leading-up to Plaintiff’s termination, Plaintiff’s supervisor, Dan Knapp, and Bruce Doctor discussed the problems Doctor’s was having with Plaintiff, and Bruce Doctor decided they would try to keep Plaintiff until the end of the winterization season (early- to mid-December) to avoid disruption to Doctor’s business during its busiest time, after which he would be terminated and Doctor’s would replace him.” Plaintiff attempts to controvert this by citing to the fact that Defendants were upset that Plaintiff asked to be paid under the table on the day he was terminated and that Defendants also told the Kansas Department of Labor that the reason for terminating Plaintiff’s employment was that (1) Plaintiff was unwilling to accept the wage offering; and (2) that Plaintiff did not “fit into [Doctor’s] system”. These facts, however, merely show that the reasons for terminating Plaintiff were numerous.

Moreover, with regard to the question of *when* Defendants decided to terminate Plaintiff, Defs’ SOF 48 states that Defendants “decided to place an add for Plaintiff’s position on Craigslist, which they did, with hopes that they would find someone able to start in February 2016.” Plaintiff does not controvert that Defendants placed the add, but attempts to suggest that maybe Defendants simply wanted to hire an additional irrigation technician for the winter months. Plaintiff further attempts to controvert Defs’ SOF 48 by citing to Doctor’s employee

Dan Knapp's deposition testimony that Doctor's may want anywhere from one to three irrigation technicians on hand in the winter months. Plaintiff, however, misses the point entirely. As was established in the prior section, there simply was no need for irrigation technicians starting early December. Come February, however, the need for irrigation technicians resumes. Because February is well within both the common and scientific definition of "winter" (e.g., after the Winter Solstice in December and before the Spring Equinox in March), Plaintiff's attempts to controvert Defs' SOF 48 fail.

With regard to Plaintiff's failings as an employee, in Defs' SOF 59, Defendants state that, "Regarding tardiness, for example, Quinn was supposed to clock-in for work by 7:30AM. The Payroll Detail (Ex. A-2), however, shows that in almost every single week of his employment, he was tardy at least once. While some of these late arrivals were excused (e.g., due to weather), the vast majority were not." Plaintiff utterly fails to controvert the substance of this statement of fact, instead suggesting simply that Defendants were silent about his tardiness. *Plaintiff's Response,* p. xix. This, however, is refuted by Defs' SOF 61, which Plaintiff did not controvert. Defs' SOF 61 states "Plaintiff admits in his deposition that he was late to work 'a few times' and that his supervisor, Dan Knapp, had talked to him about his tardiness. As such, Plaintiff's tardiness was clearly a problem.

Because Plaintiff's employment would have ended *regardless of* his filing an FLSA claim, Plaintiff cannot survive the "but for" test and Defendants are entitled to judgment as a matter of law.

**C. *Defendants are Entitled to Summary Judgment on Plaintiff's State Law Claim (Count III) Under the Kansas Minimum Wage Maximum Hour Law ("KMWMHL").***

Plaintiff completely failed to address at all defendants' argument in support of summary judgment regarding Plaintiff's claim under the KMWMHL.

Our Tenth Circuit has held "It is well established that:

> Once a party moving for summary judgment has met his initial burden, the party resisting the motion cannot rest on his pleadings. *Security National Bank v. Belleville Livestock Commission*, 619 F.2d 840, 848 (10th Cir.1979). *See also, Liberles v. County of Cook*, 709 F.2d 1122, 1126 (7th Cir.1983) ('[a] party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such issues on appeal.').

*Coffey v. Healthtrust, Inc.*, 955 F.2d 1388, 1393 (10th Cir. 1992) (*citing Dayton Hudson Corp. v. Macerich Real Estate Co*., 812 F.2d 1319, 1325 (10th Cir.)). In *Coffey*, the Tenth Circuit affirmed the district court's grant of summary judgment on a claim that the plaintiff abandoned by virtue of his failure to address it in his response to summary judgment. Similarly, the Court should deem Plaintiff's failure to address Defendants' arguments regarding the KMWMHL as fatal.

Defendants properly noted that the KMWMHL defines the term "employer" in such as way that it "shall not include any employer who is subject to the provisions of the fair labor standards act…." K.S.A. 44-1202(d). Similarly, because the Kansas law's overtime provision specifically provides that "…this section shall not apply to the employment of [a]ny employee who is covered under the provisions of section 7 of the fair labor standards act…," K.S.A. 44-1204(c)(1), Plaintiff's claim under the KMWMHL cannot survive.

Because Defendants are subject to the provisions and regulation of the FLSA, they are not employers under the Kansas law and are not subject to the KMWMHL. *Brown v. Ford Storage & Moving Co.*, 224 P.3d 593, 599 (Kan.App. 2010).

Plaintiff's failure to respond at all to Defendants' argument on this point constitutes an abandonment of this claim and defendants are entitled to summary judgment on Plaintiff's overtime claim under the KMWMHL.

### D. *Plaintiff has Abandoned his Kansas Public Policy Claim (Count IV).*

Again, Plaintiff completely failed to address at all Defendants' argument in support of

summary judgment regarding Plaintiff's Kansas Public Policy Claim. The Court should deem Plaintiff's failure to address Defendants' arguments regarding the KMWMHL as fatal. *Coffey v. Healthtrust, Inc.*, 955 F.2d 1388, 1393 (10th Cir. 1992).

WHEREFORE, Defendants respectfully request the Court grant summary judgment against Plaintiff and in favor of Defendant on all claims and for such other relief as the Court deems proper.

Respectfully submitted,

**carter law corp.**
*Attorneys for Defendants*

By: _/s/ *Eric Carter*_
Eric C. Carter, KS Bar No. 18192
114 N. Cherry, Olathe, KS 66061
913.440.0002 – fax: 913.397.6700
eric@ericcarter.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that today, March 6, 2017, a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court using the Court's CM/ECF system, which sent electronic notification to all parties participating in the CM/ECF system:

Cornerstone Law Firm
Ryan M. Paulus – r.paulus@cornerstonfirm.com
Joshua P. Wunderlich – j.wunderlich@cornerstonefirm.com
8350 N. St. Clair Ave., Ste. 225, Kansas City, Missouri 64151
Facsimile (816) 741-8889

_/s/ *Eric Carter*_
Attorneys for Defendants