IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

QUINN CROOKSTON,

        Plaintiff,

v.

                                                                                     Case No. 16-2071-JTM

DOCTOR'S, INC. and BRUCE DOCTOR,

        Defendants.

**MEMORANDUM AND ORDER**

Plaintiff Quinn Crookston filed this action against his former employer, defendant Doctor's, Inc. ("Doctor's"), and its owner, defendant Bruce Doctor. Plaintiff alleges that defendants failed to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"), and retaliated against him by terminating his employment after he informed defendants that he had contacted the United States Department of Labor ("DOL"). This matter is before the court on defendants' motion for summary judgment (Dkt. 32). For the reasons provided below, the court denies defendants' motion as to plaintiff's FLSA claims.[1]

**I.    Uncontroverted Facts.**

The court finds the following facts to be uncontroverted for purposes of summary judgment.

---

[1] Plaintiff brings alternative state claims under the Kansas Minimum Wage Maximum Hour Law ("KMWMHL"), K.S.A. §§ 44-1201 et seq. Because defendants are employers subject to the Fair Labor Standards Act, the KMWMHL does not apply, and defendants' motion for summary judgment is granted as to plaintiff's alternative state claims. *Armstrong v. Wackenhut Corp.*, No. 08-2509-JWL, 2009 WL 413189, at *1 (D. Kan. Feb. 18, 2009) ("The [KMWMHL] . . ., expressly does not apply to employers who are obliged to meet the standards of the FLSA.").

Doctor's is a lawn service company based in Stilwell, Kansas, and operates throughout the Kansas City metropolitan area. Plaintiff was employed with Doctor's as an irrigation technician. His job consisted of installing and repairing lawn sprinkler systems for Doctor's residential and commercial clients. Plaintiff's duties included driving and transporting Doctor's equipment on a truck and/or trailer to various job sites in Kansas and Missouri using public highways and roads.

Plaintiff regularly worked more than 40 hours a week. Defendants did not pay plaintiff one and a half times his regular pay rate for all work performed in excess of 40 hours during these weeks.

In November 2015, plaintiff contacted the DOL and complained about defendants' failure to pay overtime wages. On December 9, 2015, plaintiff informed his supervisor, Mr. Dan Knapp, about his complaint. Later that same day, Mr. Knapp called plaintiff into his office and fired him. Mr. Knapp told plaintiff that it was Bruce Doctor's decision, and that "Bruce says he's looked into it, and he thinks he's exempt [from paying overtime wages]." (Dkt. 1, at 6).

Additional facts will be related, as necessary, in connection with the court's analysis of defendant's motion.

II.     **Summary Judgment Standards.**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in

either party's favor. *Haynes v. Level 3 Communs.*, 456 F.3d 1215, 1219 (10th Cir. 2006). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol–Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The court views all evidence and reasonable inferences in the light most favorable to the non-moving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

### III. Plaintiff's FLSA claim.

Plaintiff claims that defendants violated the FLSA when it failed to pay him time and a half for weeks he worked more than 40 hours. Subject to certain exemptions, the FLSA mandates that employers provide overtime pay to employees who work longer than forty hours in a week. 29 U.S.C. § 207(a).

Defendants argue that they exempt from the FLSA's overtime requirements due to the Motor Carrier Act ("MCA") exemption, under 29 U.S.C. § 213(b)(1). "Once a court finds the employer is eligible to claim the exemption, the factfinder reviews the disputed facts to determine if the exemption is met[]"—a fact-bound and case-specific inquiry. *Deherrera v. Decker Truck Line, Inc.*, 820 F.3d 1147, 1154 (10th Cir. 2016).

#### A. MCA Exemption.

The MCA exemption "provides that the overtime pay requirement does not apply to 'any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of

Title 49.' *Id.* § 213(b)(1)." *Deherrera*, 820 F.3d at 1154. The Secretary of Transportation has power over an employee of a private motor carrier when "the employee[,] in the performance of his duties[,] moves goods in interstate commerce and affects the safe operation of motor vehicles on public highways." *Id.* (quoting *Foxworthy v. Hiland Dairy Co.*, 997 F.2d 670 (10th Cir. 1993)).

Section 31132(1)(A) of the MCA defines a commercial motor vehicle—in relevant part—as a motor vehicle used on highways in interstate commerce to transport property if it "has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater[.]" 49 U.S.C. § 31132(1)(A). But in 2008, Congress enacted the Technical Corrections Act ("TCA"), which amended the scope of the MCA exemption by providing that overtime compensation would be available to "covered employee[s]." *See* SAFETEA—LU Technical Corrections Act of 2008, PL 110–244, June 6, 2008, 122 Stat. 1572. Specifically, the TCA provides that "Section 7 of the [FLSA] . . . shall apply to a covered employee notwithstanding [the MCA exemption]." *See id.* at § 306(a).

The TCA defines the term "covered employee," in relevant part, as an individual employed by motor private carrier—whose work, in whole or in part, is defined

> (A) as that of a driver . . .; and
>
> (B) as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce . . .; and
>
> (3) who performs duties on motor vehicles weighing 10,000 pounds or less.

*Id.* at § 306(c). This is known as the Small Vehicle Exception to the MCA exemption to the FLSA overtime requirements. *Moore v. Performance Pressure Pumping Servs., LLC*, No. 5:15-CV-346-RCL, 2017 WL 1501436, at *8 (W.D. Tex. Apr. 26, 2017).

It is undisputed that Doctor's is a private motor carrier, and plaintiff was engaged in moving goods in interstate commerce affecting safe operations of motor vehicles on Kansas and Missouri public highways. It is also undisputed that plaintiff almost exclusively drove a 2007 Ford F-150 truck ("F-150") weighing 8,900 pounds during his employment. But plaintiff also drove the F-150 hooked to a trailer with a combined weight that likely exceeded 10,000 pounds.[2] Thus, the court's key inquiry is whether defendants have met their burden by showing plaintiff drove a motor vehicle with a gross weight of 10,001 pounds or more. If yes, then the MCA exemption applies and defendants did not have to pay overtime in accordance with the FLSA. If not, then the TCA small vehicle exception applies to exclude plaintiff from the MCA exemption and places him within the FLSA's coverage as a covered employee.

Plaintiff's employment began on August 15, 2014.[3] Plaintiff admits to driving the F-150 "pull[ing] a trailer for about six weeks out of the year, or at most from October to December." (Dkt. 36, at 9). Defendant claims that plaintiff drove the F-150 pulling a trailer during 18 weeks of all the weeks worked. Regardless, there is no dispute that plaintiff sometimes drove the F-150 without the trailer within the course of his duties; consequently,

---

[2] Plaintiff disputes that defendants have met their burden to show that the combined weight of the lightest trailer and F-150 was at least 10,001 pounds. Defendants' supporting exhibit, Ex. A-1, is dated more than nine months after plaintiff's termination. Regardless, it is undisputed that plaintiff's F-150 weighed 8,900 pounds. It is also undisputed that plaintiff sometimes drove the F-150 hooked to a trailer. Because defendants are not entitled to summary judgment it is not necessary for the court to resolve this matter at this time.

[3] Plaintiff's August 15, 2015 start date is uncontroverted, but defendant's Ex. A-2 indicates that plaintiff actually began on August 15, 2014. (Dkt. 33-3, at 1).

the court is dealing with a "mixed fleet"—part small vehicle and part commercial vehicle—situation.

Courts that have considered the issue of "mixed fleet" vehicles are divided on the proper approach. Some courts hold that the MCA exemption favors coverage of the employee during the course of employment, so long as the time the employee spends operating commercial motor vehicles is more than de minimus; while other courts hold that the small vehicle exception applies because the employee's work need only "in whole or in part" affect the safety of operation of vehicles weighing 10,000 pounds or less. *See Twiddy v. Alfred Nickles Bakery, Inc.*, No. 5:14CV02053, 2017 WL 1199167, at *5–6 (N.D. Ohio Mar. 31, 2017) (reviewing both approaches).

The court finds the latter approach more persuasive as it gives the actual language of the TCA its due. Plaintiff drove a small vehicle part of the time he was employed with defendants. The burden lies with the employer to establish that the MCA exemption applies and that the TCA does not. *Moore*, 2017 WL 1501436 at *9–10. The court finds that defendants have not met their burden as they acknowledge that plaintiff drove a noncommercial vehicle (the F-150 without a trailer) more than half the time he was employed with Doctor's. *See id.* at *10 ("[A]t the summary judgment stage, an employer must provide evidence that its employees exclusively drove vehicles greater than 10,000 pounds during a relevant workweek, or that any work with small vehicles was merely de minimis work."). Defendant's motion is denied with respect to plaintiff's FLSA overtime claim.

**IV.    Plaintiff's Retaliation Claim.**

The FLSA prohibits retaliation against an employee because he engaged in protected activity. *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1201 (10th Cir. 2004); 29 U.S.C § 215(a)(3) (it is unlawful to discharge an employee because he filed a complaint). Plaintiff claims that defendants retaliated against him when they terminated his employment after informing defendants of his complaint with the DOL.

### A. The *McDonnell Douglas* Standards.

"FLSA retaliation claims are analyzed under the familiar three-pronged [*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)], burden-shifting framework." *Pacheco*, 365 F.3d at 1206. Under the first prong, plaintiff must establish a prima facie case of retaliation by demonstrating (1) he engaged in protected activity under FLSA; (2) he suffered an adverse employment action contemporaneous with or subsequent to the protected activity; and (3) a causal connection between the protected activity and the adverse employment action. *Id.*

If plaintiff meets the first prong, the burden of production shifts to defendants to offer a legitimate, non-retaliatory reason for firing plaintiff. *Id.* Defendants "need not prove the absence of retaliatory motive; rather, [they] need only produce evidence that would dispel the inference of retaliation." *Id.* at 1206–07.

The burden then shifts back to plaintiff to show genuine issues of material fact exist regarding whether defendants' proffered reasons are unworthy of credence. *See id.* at 1207. To survive summary judgment, plaintiff can produce direct evidence of retaliation or other evidence showing defendants' proffered non-retaliatory reasons for plaintiff's termination were pretextual, i.e. defendants' proffered reasons are so weak, implausible, or inconsistent a

reasonable jury would not believe them. *Id.* "Conclusory allegations, conjecture, or mere allegations of impartial treatment are insufficient to show pretext." *Id.*

### B. Application of the Burden-Shifting Framework.

Plaintiff meets the first prong: he reported a FLSA claim with the DOL, he later informed Mr. Knapp of his complaint, and was subsequently fired. *See id.* ("A causal connection can be demonstrated circumstantially through evidence that justifies an inference of retaliatory motive, such as a 'very close' temporal proximity between the protected activity and adverse employment action."). Thus, the court moves to the second prong of the *McDonnell Douglas* framework.

Defendants concede that plaintiff was terminated the same day they learned about his FLSA complaint, but argue that they made the decision to fire plaintiff more than a month before December 9, 2015. They had posted an ad on Craigslist for plaintiff's position on November 25, 2015. Defendants also provide legitimate reasons why plaintiff's discharge was not retaliatory: plaintiff had a poor work attitude, he had several unexcused tardies, and—as a seasonal employee—plaintiff did not have jobs scheduled passed December 9, 2015. Defendants reference plaintiff's prior work history as an irrigation technician and note that he was also laid-off between December and February the prior two years. Defendants' Craigslist ad had a start date of February 2016. Therefore, the burden shifts back to plaintiff.

Plaintiff argues that defendants' decision to terminate his employment was made solely on December 9, 2015,—as opposed to a month earlier—and cites Bruce Doctor's statement to the Kansas Department of Labor indicating that plaintiff was terminated because he "was unwilling to accept the wage offer[ed] and it was determined that he does

not fit into our system." (Dkt. 36, at 15). Bruce Doctor testified in his deposition that they terminated plaintiff because he wanted to be paid cash under the table. Plaintiff also controverts defendants' reason for placing the Craigslist ad and argues that defendants employed anywhere from one to three irrigation technicians depending on the workload.

The court finds that plaintiff has produced sufficient evidence showing that defendants' reasons are inconsistent such that a reasonable jury would not believe them. Defendants did not document any instances of plaintiff having a bad attitude. Furthermore, text messages on December 8 and 9, 2015, between plaintiff and Mr. Knapp indicated that they were going to sit down and discuss the possibility of a raise. These text messages are inconsistent with defendants' position that they had made the decision to terminate plaintiff a month earlier. Although it is a close question, the court finds that plaintiff's evidence supports his argument that defendants' decision to terminate occurred solely on December 9, 2015. This evidence, coupled with the temporal proximity of his termination following notification of plaintiff's complaint to the DOL, is sufficient to raise a fact issue of pretext. Therefore, defendants' are not entitled to summary judgment on plaintiff's retaliation claim.

V. **Conclusion.**

For the reasons indicated previously, the court concludes that genuine material issues of fact remain whether defendant is exempt from paying overtime wages under the FLSA. Additionally, plaintiff has presented sufficient evidence that a factfinder could determine defendants' reasons for terminating plaintiff were pretextual. As such, summary judgment is not proper on plaintiff's FLSA claims. Summary judgment, however, is proper on plaintiff's alternative state claims.

IT IS THEREFORE ORDERED this 6th day of June, 2017, that defendants' motion for summary judgment (Dkt. 32) is DENIED as to Counts I and II.

IT IS FURTHER ORDERED that defendants' motion for summary judgment is GRANTED as to alternative Counts III and IV.

s/ J. Thomas Marten<br>
United States District Court